FILED IN OPEN COURT
JACKSONVILLE, FLORIDA

11|13|25

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:25-cr-128-MMH-PDB

ABIGAIL PAYTON

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Gregory W. Kehoe, United States Attorney for the Middle District of Florida, and the defendant, Abigail Payton, and the attorney for the defendant, Sabra Barnett, Esq., mutually agree as follows:

### A.  Particularized Terms

1.  Count(s) Pleading To

The defendant shall enter a plea of guilty to Counts One, Two, Five, and Six of the Indictment.  Counts One and Two charge the defendant with Bank Fraud, in violation of 18 U.S.C. § 1344. Counts Five and Six charge the defendant with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1).

2.  Minimum and Maximum Penalties

Counts One and Two are each punishable by a term of imprisonment of up to 30 years; a fine of up to $250,000 $1,000,000 KSJBAP, or both a term of

Defendant's Initials AP                         AF Approval  _JMH_

imprisonment and a fine; a term of supervised release of up to five years; and a special assessment of $100 per felony count, which is due at the time of sentencing. A violation of the terms and conditions of supervised release is punishable by up to three years' imprisonment, as well as the possibility of an additional term of supervised release.

Counts Five and Six are each punishable by a mandatory minimum term of imprisonment of two years, to run consecutively with any other term of imprisonment imposed; a fine of up to $250,000, or both a term of imprisonment and a fine; a term of supervised release of up to one year; and a special assessment of $100 per felony count, which is due at the time of sentencing. A violation of the terms and conditions of supervised release is punishable by up to one year imprisonment, as well as the possibility of an additional term of supervised release. In the discretion of the court, a term of imprisonment imposed for either Count Five or Six can run concurrently, in whole or in part, with a term of imprisonment that is imposed at the same time for the other count (this is, for Count Five or Six).

The cumulative penalties for Counts One, Two, Five, and Six are a mandatory minimum term of two years imprisonment, up to a maximum term of 64 years imprisonment; a fine of $1,000,000, or both a term of imprisonment and a fine; a term of supervised release of up to five years; and a special

[handwritten: $2,500,000 KS SB AP]

Defendant's Initials ___AP___

2

assessment of $400. A violation of the terms and conditions of supervised release is punishable by up to eight years' imprisonment, as well as the possibility of an additional term of supervised release.

3.   Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.  The elements of Counts One and Two are:

| | |
|---|---|
| First: | the defendant knowingly carried out or attempted to carry out a scheme to defraud a financial institution by using false or fraudulent pretenses, representations, or promises about a material fact; |
| Second: | the false or fraudulent pretenses, representations, or promises were material; and |
| Third: | the financial institution was federally insured. |

The elements of Counts Five and Six are:

| | |
|---|---|
| First: | the defendant knowingly transferred, possessed, or used another person's means of identification; |
| Second: | without lawful authority; |
| Third: | during and in relation to bank fraud. |

4.   Counts Dismissed

At the time of sentencing, the remaining count(s) against the defendant, Counts Three, Four, Seven, and Eight, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

Defendant's Initials _AP_              3

5.      No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses that are known to the United States Attorney's Office at the time of the execution of this agreement, related to the specific conduct described in particularity in the factual basis of this plea agreement.

6.      Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion

Defendant's Initials ___AP___                4

pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7.      Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(2)(A), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the $38,760.26 in proceeds the defendant admits she obtained as the result of the commission of the offenses charged in Counts One and Two, to which the defendant is pleading guilty. The defendant acknowledges and agrees that: (1) the defendant obtained this amount as a result of the commission of the offenses, and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence.  Therefore, the defendant agrees that pursuant to 21

5

Defendant's Initials _AP_

U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense(s) of conviction. The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense(s) and consents to the entry of the forfeiture order into the Treasury Offset Program. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed

Defendant's Initials ___AP___

6

by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be polygraphed on the issue of assets, if

7

Defendant's Initials ____AP____

it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the

Defendant's Initials ___AP___

8

abatement of any underlying criminal conviction after the execution of this agreement.   The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

8.      <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to Community First Credit Union.

9.      <u>Restitution to Persons Other Than the Victim of the Offense of Conviction - Agreed Upon Amount</u>

Pursuant to 18 U.S.C. §§ 3663(a)(3) and/or 3663A(a)(3), defendant agrees to make restitution to Truist Bank in the amount of $25,000 and Arrowhead Credit Union in the amount of $10,057.

**B.      Standard Terms and Conditions**

1.      <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663,

Defendant's Initials ___*AP*___

9

including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied. On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

10

Defendant's Initials _AP_

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.      Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.      Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that her financial statement and disclosures will be complete, accurate and

Defendant's Initials _AP_          11

truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.   The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.  Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement or defer a decision until it has had an opportunity to consider the presentence

12

Defendant's Initials _AP_

report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court

Defendant's Initials _AP_

13

pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.     Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.  Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon

14

Defendant's Initials ___AP___

any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also

15

Defendant's Initials _____AP_____

understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

16

Defendant's Initials _____AP_____

13.    Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___31___ day of October 2025.

GREGORY W. KEHOE
United States Attorney

_____
ABIGAIL PAYTON
Defendant

_____
KELLI A. SWANEY
Assistant United States Attorney

_____
SABRA BARNETT, ESQ.
Attorney for Defendant

_____
MICHAEL J. COOLICAN
Assistant United States Attorney
Deputy Chief, Jacksonville Division

Defendant's Initials __AP__    17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                       CASE NO. 3:25-cr-128-MMH-PDB

ABIGAIL PAYTON

PERSONALIZATION OF ELEMENTS

**Count One**

1.    From September 2023 through May 2024, in the Middle District of Florida and elsewhere, did you knowingly carry out a scheme to defraud Community First Credit Union by using false or fraudulent pretenses and representations about material facts, including by assuming the identity of another person (E.A.) and obtaining a loan from the credit union in E.A.'s name?

2.    Were the false or fraudulent pretenses and representations you used material, or about important facts?

3.    Did you intend to defraud Community First Credit Union?

4.    Was Community First Credit Union federally insured?

Defendant's Initials _____*AP*_____                    18

## Count Two

1.     From September 2023 through May 2024, in the Middle District of Florida and elsewhere, did you knowingly carry out a scheme to defraud Community First Credit Union by using false or fraudulent pretenses and representations about material facts, including by assuming the identity of another person (K.V.) and obtaining a loan from the credit union in K.V.'s name?

2.     Were the false or fraudulent pretenses and representations you used material, or about important facts?

3.     Did you intend to defraud Community First Credit Union?

4.     Was Community First Credit Union federally insured?

## Count Five

1.     On or about September 6, 2023, did you knowingly transfer, possess, or use another person's (E.A.'s) means of identification?

2.     Did you transfer, possess, or use E.A.'s means of identification without lawful authority?

3.     Did you transfer, possess, or use E.A.'s means of identification during and in relation to the bank fraud alleged in Count One?

19

Defendant's Initials _____

**Count Six**

1.   On or about September 9, 2023, did you knowingly transfer, possess, or use another person's (K.V.'s) means of identification?

2.   Did you transfer, possess, or use K.V.'s means of identification without lawful authority?

3.   Did you transfer, possess, or use K.V.'s means of identification during and in relation to the bank fraud alleged in Count Two?

20

Defendant's Initials ___AP___

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 3:25-cr-128-MMH-PDB

ABIGAIL PAYTON

## FACTUAL BASIS

Abigail PAYTON obtained the means of identification of another person, that is, the Social Security number, date of birth, and driver's license number of E.A. On September 6, 2023, PAYTON went to a Community First Credit Union (Community First) location in Jacksonville, Florida, and applied to open a bank account under the identity of E.A. During that process, PAYTON provided a Texas driver's license purporting to be in the name of E.A., but which contained PAYTON's photograph. PAYTON, under the identity of E.A., certified to Community First that the information she provided was correct. PAYTON obtained personal checking and savings accounts in the identity of E.A. On or about October 5, 2023, PAYTON applied to obtain a loan from Community First under the identity of E.A. During the process of obtaining the loan, PAYTON provided E.A.'s Social Security number and date of birth. On October 6, 2023, Community First approved the loan and deposited $35,000 into an account controlled by PAYTON.

Defendant's Initials __AP__

PAYTON also obtained the means of identification of another person, that is, the Social Security number, date of birth, and driver's license number of K.V. On September 9, 2023, PAYTON went to a Community First location in Jacksonville, Florida, and applied to open a bank account under the identity of K.V. During that process, PAYTON provided a Georgia driver's license purporting to be in the name of K.V., but which contained PAYTON's photograph. PAYTON, under the identity of K.V., certified to Community First that the information she provided was correct. PAYTON obtained personal checking and savings accounts in the identity of K.V. On or about September 11, 2023, PAYTON applied to obtain a loan from Community First under the identity of K.V. During the process of obtaining the loan, PAYTON provided the Social Security number and date of birth of K.V. On September 14, 2023, Community First approved the loan and deposited $25,000 into an account controlled by PAYTON.

Before Community First became aware of the fraud, PAYTON spent, or withdrew in cash, $38,760.26 of the $60,000; PAYTON used these funds for various personal expenses. Thus, between the loans taken out in the names of E.A. and K.V., the actual loss amount suffered by Community First totaled $38,760.26. At all times relevant to these events, Community First was a financial institution doing business in the Middle District of Florida, and

Defendant's Initials ___AP___

2

elsewhere, and its accounts were federally insured by the National Credit Union Administration. PAYTON did not have authority from E.A. or K.V. to take any of the actions described above.

In addition, PAYTON obtained the means of identification of another person, including the Social Security number, date of birth, and driver's license number of S.S. On November 3, 2023, PAYTON went to Space Coast Credit Union (Space Coast), location in Fort Lauderdale, Florida, and applied to open a bank account under the identity of S.S. During that process, PAYTON provided a Geogia driver's license purporting to be in the name of S.S., but which contained PAYTON's photograph. PAYTON certified the information she provided was correct. PAYTON obtained personal checking and saving accounts in the name of S.S. and, on or about December 8, 2023, PAYTON wrote a check, in the name of S.S., to herself in the amount of $1,500, but the account balance was insufficient to honor the check.

PAYTON also obtained the means of identification of another person, including the Social Security number, date of birth, and driver's license number of K.P. On November 6, 2023, PAYTON went to a Space Coast location in Fort Lauderdale, Florida, and applied to open a bank account under the name of K.P. During that process, PAYTON provided Space Coast with the Social Security number, date of birth, and driver's license number of K.P. PAYTON

Defendant's Initials __AP__          3

certified the information she provided was correct. PAYTON obtained personal checking and savings accounts in the name of K.P. and, on or about December 26, 2023, PAYTON wrote a check, in the name of K.P., to herself in the amount of $2,000, but the account balance was insufficient to honor the check.

At all times relevant to these events, Space Coast was a financial institution doing business in the Middle District of Florida, and elsewhere, and its accounts were federally insured by the National Credit Union Administration. Further, as it relates to the events described above, Space Coast reviewed and approved applications to open accounts at a branch located in the Middle District of Florida. PAYTON did not have authority from S.S. or K.P. to take any of the actions described above.

PAYTON opened another bank account at Truist Bank under the identity of K.V. and took out a loan in the amount of $25,000. The actual loss amount for Truist Bank was $25,000. PAYTON opened an additional bank account at Arrowhead Credit Union under the identity of another person, K.C., in the amount of $10,000. The actual loss amount for Arrowhead Credit Union was $10,057. Moreover, when PAYTON was stopped by police in Kentucky in May 2024, investigators located blank checks issued by U.S. Bank in the name of two other people, C.C. and K.S. Subsequently, records from U.S. Bank revealed there were bank accounts opened under the names of C.C. and K.S. in

Defendant's Initials _AP_      4

May 2023 and June 2023, respectively. An iPhone which belonged to PAYTON contained images of two fraudulent driver's licenses, purporting to be C.C. and K.S., but both of which contained PAYTON's photograph.

5

Defendant's Initials _____